UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LLOYD JACKSON,

        Petitioner,

                                Case No. 14-cv-11982

v.

                                Honorable Linda V. Parker

W. SMITH,

        Respondent.

_____/

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
GRANTING IN PART A CERTIFICATE OF APPEALABILITY, AND
<u>GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL</u>**

## I. INTRODUCTION

State prisoner Michael Lloyd Jackson ("Petitioner") has filed a pro se

application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. The habeas

petition challenges Petitioner's plea-based conviction for assault with intent to do

great bodily harm less than murder, Mich. Comp. Laws § 750.84. Petitioner

asserts several grounds for relief regarding the voluntariness of his plea, his

sentence, the prosecutor's conduct, the sufficiency of the evidence, his trial

attorney, and the trial judge. Warden W. Smith ("Respondent") urges the Court to

deny the petition on grounds that Petitioner procedurally defaulted three of his

claims, that one of his claims is moot, and that the state-court decisions on

Petitioner's claims were objectively reasonable.  The Court agrees that Petitioner's claims do not warrant habeas relief.  Accordingly, the habeas petition will be denied.

## II.  BACKGROUND

### A.  The Charge, Plea, Post-Plea Motion and Hearing, Sentence, and Direct Appeal

Petitioner was charged with multiple crimes in two separate cases.  In a 2008 case (Bay City Circuit Court number 08-10843), Petitioner was charged with: (1) assault with intent to do great bodily harm less than murder; (2) domestic violence, third offense; (3) felon in possession of a firearm; and (4) possession of a firearm during the commission of a felony.  In a 2009 case (Bay City Circuit Court number 09-10524), Petitioner was charged with assault with intent to do great bodily harm less than murder.

The case at issue here is the 2009 case, which arose from an incident at the Bay County Jail in Bay City, Michigan, on May 21, 2009.  Both Petitioner and the victim were inmates at the jail on that day.  According to the police report, which was based on interviews with several inmates who witnessed various parts of the incident, Petitioner followed the victim into the victim's room and began hitting the victim on the head with his fist.  The victim apparently fell to the floor. Petitioner then punched the victim so hard that the victim's head bounced off the

cement floor. Petitioner subsequently slammed the door on the victim's head two or three times. The victim was taken to the hospital and treated for a broken cheekbone, a laceration that required sutures on his lower lip, and several bruises on the rear of his head. (Jury Selection and Plea Tr. at 97-103, June 30, 2009.)

Petitioner's trial in the 2008 case commenced in Bay County Circuit Court on June 30, 2009. Following jury selection in that case, Petitioner pleaded no-contest, as charged, to assault with intent to do great bodily harm less than murder in the 2009 case. In exchange for Petitioner's plea, the prosecutor agreed to dismiss the four charges in the 2008 case. The plea agreement required Petitioner to waive his double jeopardy rights in the 2008 case if his plea in the 2009 case was invalidated. Petitioner also agreed to make restitution and not to contest the notice of intent to sentence him as a second felony offender.

Petitioner subsequently moved to withdraw his plea on the basis that the victim set up the fight, that he was pressured into pleading no contest, and that he was innocent of the charge. The trial court held a hearing on Petitioner's motion, but denied the motion at the conclusion of the hearing on August 28, 2009, and then sentenced Petitioner to prison for 95 to 180 months (seven years, eleven months to fifteen years).

In a delayed application for leave to appeal in the Michigan Court of Appeals, Petitioner argued that: (1) the trial court abused its discretion and violated his constitutional rights when it denied his motion to withdraw his plea; and (2) the court violated his right to due process by mis-scoring four offense variables. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *See People v. Jackson*, No. 295312 (Mich. Ct. App. Jan. 14, 2010). Petitioner raised the same claims in the Michigan Supreme Court, which denied leave to appeal because it was not persuaded to review the issues. *See People v. Jackson*, 486 Mich. 929; 781 N.W.2d 823 (2010).

## B.  The State Collateral Proceedings

On September 23, 2010, Petitioner filed a motion for relief from judgment in which he argued that:  (1) the prosecutor committed misconduct by not granting immunity to the defense witness that Petitioner produced at the hearing on his motion to withdraw the plea, and trial counsel was ineffective for failing to challenge the prosecutor's decision; (2) his conviction was not supported by sufficient evidence, and trial counsel was ineffective for failing to properly communicate with him; (3) the trial court erred by not granting sentencing credit for the time Petitioner served in jail before sentencing; and (4) trial counsel had a conflict of interest, and the judge was biased.  The state trial court denied

4

Petitioner's motion on the merits and pursuant to Michigan Court Rule 6.508(D)(3). *See People v. Jackson,* No. 09-10524-FH-G (Bay County Cir. Ct. June 17, 2011).

Petitioner appealed the trial court's decision, arguing that the prosecutor intimidated his witness at the post-conviction hearing by denying immunity to the witness. Petitioner also alleged that trial counsel was ineffective for (a) not challenging the prosecutor's denial of immunity, (b) failing to properly advise Petitioner with respect to his plea bargain, and (c) failing to raise a complete defense to the charge of felon in possession of a firearm. The Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Jackson*, No. 310892 (Mich. Ct. App. Nov. 30, 2012).

In an application for leave to appeal in the Michigan Supreme Court, Petitioner alleged that he was deprived of his right to present a defense and effective assistance of counsel when (a) the prosecutor refused to immunize Petitioner's witness at the post-conviction hearing, (b) the trial court failed to order immunity for the witness, and (c) defense counsel failed to make a proper objection to the prosecutor's decision. Petitioner also argued that his trial attorney failed to make a defense to the felon-in-possession charge and that the attorney

advised him to accept an illusory plea bargain.  On June 25, 2013, the Michigan

Supreme Court denied leave to appeal for failure to establish entitlement to relief

under Michigan Court Rule 6.508(D).  *See People v. Jackson*, 494 Mich. 869; 832

N.W.2d 238 (2013).

## C.  The Habeas Petition and Responsive Pleading

On May 16, 2014, Petitioner filed his habeas corpus petition.  The Court

understands Petitioner to assert as grounds for relief the following:

I.   The trial court abused its discretion and violated Mr. Jackson's state and federal constitutional rights to due process by denying his motion to withdraw his plea prior to sentencing, where his plea was not knowing and intelligent and therefore not voluntary;

II.  The trial court violated Mr. Jackson's due process rights at sentencing by mis-scoring offense variables 4, 7, 10, and 19 of the sentencing guidelines;

III. It was error for the prosecutor not to grant any type of immunity for defense witness Lesniak and that decision rose to the level of prosecutorial misconduct, and it was ineffective assistance for counsel not to challenge the prosecutor's decision on immunity;

IV.  Mr. Jackson was denied his state and federal due process rights where his conviction was not supported by sufficient evidence of guilt; trial counsel was ineffective for failing to properly communicate with Mr. Jackson;

V.   It was error for the trial court to deny Mr. Jackson credit against the sentence for time served in jail prior to sentencing; and

6

VI.   Trial counsel had a conflict of interest that would have affected the fairness of the trial, and the judge's conduct (denying the motion to withdraw as counsel and postponing the sentencing of the defense witness) was indicative of bias against Mr. Jackson.

The State argues in an answer to the petition that Petitioner's third, fourth, and sixth claims are procedurally defaulted, that Petitioner's other claims are moot or not cognizable on habeas review, and that the state courts' rejection of Petitioner's claims was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.  The Court agrees, and to the extent Petitioner also did not exhaust state remedies for any of his claims, the Court overlooks the omission because the unexhausted claims are moot or procedurally defaulted.

## III.  STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  Pursuant to § 2254, the court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

7

>law, as determined by the Supreme Court of the United States; or

>(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

>Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S.

19, 24, 123 S. Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664  (2004)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

## IV.  ANALYSIS

### A.  Claim One:  Involuntary Plea

Petitioner alleges that the trial court abused its discretion and violated his constitutional right to due process by denying his motion to withdraw his plea before sentencing.  Petitioner asserts that he was rushed and pressured into pleading no-contest and, therefore, his plea was not voluntary, knowing, and intelligent.  Petitioner further alleges that, after he pleaded no contest, he received new information that would have led him to go to trial.  Finally, Petitioner claims that the trial court abused its discretion by not addressing his assertion of innocence.

9

### 1. Clearly Established Federal Law

A defendant has no absolute right to withdraw a guilty or no-contest plea. *United States v. Martin*, 668 F.3d 787, 794 (6th Cir. 2012); *Shanks v. Wolfenbarger*, 387 F. Supp.2d 740, 748 (E.D. Mich. 2005). Unless the plea violated a clearly-established constitutional right, the decision whether to allow a defendant to withdraw a no-contest plea is discretionary with the state trial court. *Shanks*, 387 F. Supp.2d at 748. And whether the state court abused its discretion when denying Petitioner's motion to withdraw his plea is a question of state law, which "cannot support federal habeas relief, absent a showing that the alleged error rendered the proceedings fundamentally unfair." *Xie v. Edwards*, 35 F.3d 567, 1994 WL 462143, at *2 (6th Cir. Aug. 25, 1994) (unpublished decision citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), and *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993)). The Court nevertheless will consider Petitioner's related contention that his no-contest plea was involuntary, unknowing, and unintelligent.

"A guilty or no-contest plea involves a waiver of many substantial constitutional rights," *Fautenberry v. Mitchell*, 515 F.3d 614, 636 (6th Cir. 2008), and an involuntary plea is "an impairment of a defendant's substantial rights," *Martin*, 668 F.3d at 792. Consequently, the plea must be a voluntary, knowing,

10

and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).

For a guilty plea to be valid, the defendant must appreciate the consequences of his waiver of constitutional rights, waive his rights without being coerced to do so, and understand the rights that he is surrendering by pleading guilty. *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009). The defendant must understand the essential elements of the offense and be aware of the maximum sentence that could be imposed. *Id*. at 408-09. Courts consider all the relevant circumstances when determining whether a plea was voluntary. *Brady*, 397 U.S. at 749.

### 2. Application

#### a. The Plea Proceeding

At the plea proceeding, the assistant prosecutor explained the plea agreement on the record. Petitioner subsequently stated that he understood the agreement and that no other promises had been made to him. (Jury Selection and Plea Tr. at 82-85, June 30, 2009.) The trial court then read the charge to Petitioner and explained that the crime carried a maximum sentence of ten years, but that the sentence would be a maximum of fifteen years in Petitioner's case because he was a habitual offender. Petitioner stated that he fully understood the charge and the fact

11

that the charges in his 2008 case could be reinstated if he withdrew his plea in the 2009 case.  (*Id*. at 85-86.)

When Petitioner's attorney asked Petitioner whether he had reached a decision of his own free will, Petitioner stated that he felt rushed, but that he wanted to go ahead with the plea and be done with it.  (*Id*. at 89-90.)  The trial court then said that, if Petitioner felt rushed, the court would not accept the plea. But Petitioner said that, even though he felt rushed, he still wanted to accept the plea offer.  (*Id*. at 91-93.)  He explained his decision by stating that he first received the offer earlier that day, but that he did not want to waste anyone's time, upset the prosecutor or his attorney, or be chastised by the court.  He nevertheless insisted that, although he may have been feeling a little rushed, he was accepting the plea offer of his own free will and that he wanted to "get it done."  (*Id*. at 93.)

To clarify the matter, the trial court asked Petitioner whether he was saying that

> you felt rushed because it – this is – you didn't have this offer before today; that you've had enough time to think it over; and, that you're doing this voluntarily, and there isn't any undue rush or pressure in this decision that you're making.  Is that correct?

(*Id*. 94.)  Petitioner responded, "That's correct."  (*Id.*)

The prosecutor also found it necessary to clarify that Petitioner was accepting the plea offer, that he had no further questions, that he did not feel

12

rushed, that he was pleading no contest voluntarily, and that he was not under any

pressure to plead no contest.  Petitioner agreed that was true and then stated that he

was pleading no contest and that no one had threatened him, promised him

anything, or pressured him to plead no contest.  (*Id.* at 94-97.)  Petitioner also

stated that he understood he was waiving certain rights by pleading no contest, and

he said that he was offering his plea freely and voluntarily.  (*Id*. at 96.)

Finally, Petitioner claimed to understand that, if his plea was the result of

any undisclosed promises, threats, or pressures, he was required to tell the court

about them at the plea proceeding or to give up the claim that those undisclosed

promises, threats, or pressures caused him to enter his plea.  (*Id*. at 96-97.)  The

trial court accepted the plea after concluding that Petitioner was pleading

voluntarily and that he understood the charge, the maximum possible sentence, and

the rights he was waiving.  (*Id*. at 108-09.)

### b.  The Post-Conviction Hearing

At the post-conviction hearing in state court, both Petitioner and his mother

testified that Petitioner felt pressured to plead no contest.  Petitioner claimed that

he pleaded no contest under pressure after talking with his attorney, his mother,

and an attorney that his mother hired.  He claimed that he was innocent, that he

thought his trial attorney was tired of his cases and wanted to close them, and that

13

he did not want to mess up his trial by going against what everyone else was saying.  (Mot. Hr'g and Sentencing Tr. at 18-28, 34, Aug. 28, 2009.)

Petitioner's mother testified that she pressured Petitioner to plead no contest by telling him he could get up to life imprisonment if he were convicted and sentenced as a fourth habitual offender.  She also stated that she had a lot of influence over her son at the time and that defense counsel had advised her it would be difficult to win the case, given the videotape of the incident at the jail.  (*Id*. at 55-56, 63.)

The trial court stated at the conclusion of the hearing that there obviously was pressure because Petitioner already had one conviction, his second trial had begun, and then he received an offer on the third case.  According to the trial court, there was a certain amount of pressure from Petitioner's attorney, Petitioner's mother, and the attorney his mother brought to the courthouse.  The court nevertheless concluded that it was not the kind of pressure that allowed someone to withdraw a plea after stating on the record that he was making his plea voluntarily and without undo influence or pressure.  The court also stated that Petitioner waived the argument about being pressured because Petitioner acknowledged at the plea proceeding that, if he did not mention there was some undo influence or pressure, he could not raise the issue later.  (*Id*. at 67-68.)

14

### c.  Conclusion

The state trial court's refusal to set aside the plea and its decision that Petitioner's plea was voluntary and knowing were objectively reasonable because Petitioner claimed to understand the consequences of his plea at the plea proceeding and he repeatedly stated that he wanted to proceed with the plea despite feeling somewhat pressured.  Although he admitted to being a little rushed at the time, and even though he expressed some concern about upsetting people by declining the plea offer, he ultimately assured the trial court that he was pleading no contest of his own free will.  His "[s]olemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

In conclusion, the state court's decision was not contrary to Supreme Court case law, an unreasonable application of Supreme Court case law, or an unreasonable determination of the facts.  The Court therefore declines to grant relief on Petitioner's constitutional claim that his plea was not voluntary, knowing, or intelligent.

## B.  Claim Two:  Mis-scored Sentencing Guidelines

Petitioner alleges next that the trial court violated his right to due process at sentencing by mis-scoring offense variables 4, 7, 10, and 19 of the Michigan sentencing guidelines.

15

### 1. Clearly Established Federal Law

The state trial "court's alleged misinterpretation of state sentencing guidelines . . . is a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Consequently, Petitioner's allegation that the trial court incorrectly scored four offense variables of the state sentencing guidelines is not a cognizable claim on federal habeas corpus review. *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001).

Petitioner nevertheless couches his claim in constitutional terms by asserting that he had a due process right to be sentenced on accurate information.  In *Townsend v. Burke*, 334 U.S. 736 (1948), the Supreme Court stated that a sentence based on "extensively and materially false" information, which the prisoner had no opportunity to correct through counsel, violates due process.  *Id*. at 741.  Petitioner was represented by counsel at his plea, and, for the following reasons, the Court finds that he was not sentenced on the basis of extensively and materially false information.

## 2. Offense Variable 4

Petitioner contends that he should not have received any points for offense variable 4, which is "psychological injury to a victim."  Mich. Comp. Laws § 777.34(1).  A sentencing court has the option of scoring no points for this offense variable or ten points if the victim suffered "[s]erious psychological injury requiring professional treatment."  Mich. Comp. Laws § 777.34(1)(a).

The victim in this case testified at Petitioner's sentencing that, as a result of Petitioner's assault on him, he recently talked to a counselor and that he intended to see the counselor twice a month and a "psych" once a month.  He also testified that the incident had changed him.  He explained that he could not sleep well, he was scared to go some places, he had nightmares about the incident, and he was more uncomfortable than usual around people.  (Mot. Hr'g and Sentencing Tr. at 106-09, Aug. 28, 2009.)  Although the victim had not received any professional treatment as of the date of the hearing, *id*. at 108, that fact is not conclusive when making the determination as to whether he suffered serious psychological injury requiring professional treatment.  Mich. Comp. Laws § 777.34(2).

The state trial court determined on the basis of the victim's testimony that offense variable 4 was appropriately scored at ten points.  (Mot. Hr'g and

Sentencing Tr. at 110, Aug. 28, 2009.)  Given the victim's testimony, the trial court did not rely on materially false information when scoring offense variable 4.

### 3. Offense Variable 7

Petitioner alleges that he should not have received fifty points for offense variable 7 because the offense involved a fight and the conduct used to score variable offense variable 7 was nothing more than what was required to satisfy the elements of the offense.

"Offense variable 7 is aggravated physical abuse."  MICH. COMP. LAWS § 777.37(1).  This offense variable should be scored fifty points if "[a] victim was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."  MICH. COMP. LAWS § 777.37(1)(a).

One eyewitness to the assault informed a law enforcement officer that he observed Petitioner throw the first punch.  When the witness subsequently exited his room, he saw the victim lying on the floor.  He could see the victim's head bouncing off the floor, and he assumed that Petitioner was punching the man.  The witness then saw Petitioner slam the door on the victim and go back into the victim's room.  The eyewitness saw the victim's head move again, and he assumed

that Petitioner had resumed punching the victim.  (Jury Selection and Plea Tr., at 102-03, June 30, 2009).

Given this description of the offense, the trial court reasonably concluded from all the evidence that offense variable 7 was appropriately scored at fifty points.  Petitioner went beyond committing an assault with intent to do great bodily harm when he slammed the victim's head between the door and the door frame and then beat him again.  The trial court therefore did not rely on materially false information when scoring offense variable 7.

### 4.  Offense Variable 10

Petitioner states that he should not have received any points for offense variable 10, which is "exploitation of a vulnerable victim."  MICH. COMP. LAWS § 777.40(1).  Petitioner received five points for this offense variable, and five points is appropriate if "[t]he offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious."  Mich. Comp. Laws Ann. § 777.40(1)(c).

The prosecutor pointed out at sentencing that Petitioner put the victim in a vulnerable state by beating him into a state of near unconsciousness.  The prosecutor's observation is supported by an eyewitness's statement that the victim

19

was unconscious before Petitioner hit him with the door.  (Jury Selection and Plea Tr. at 101, June 30, 2009.)

The victim's description of the fight also suggests that he became unconscious during the beating.  The victim informed a deputy sheriff that, after he and Petitioner walked into a room, Petitioner held him in a head lock and he could not breathe.  The victim could not remember anything else about the assault; the next thing he remembered was being in the hospital.  (Delayed Application for Leave to Appeal, Mich. Ct. App. No. 295312, ECF No. 7-13, Pg ID 604-05.)

The trial court concluded from the totality of the circumstances, including what Petitioner did to the victim while the victim was on the ground, that five points was an appropriate score for offense variable 10.  (Mot. Hr'g and Sentencing Tr. at 123, Aug. 28, 2009.)   This conclusion was not based on extensively or materially false information.

Even if the trial court erred in reaching its conclusion on offense variable 10, defense counsel stated at sentencing that a difference in five points would not affect the scoring of the guidelines.  *Id*. at 122.  Therefore, any error in scoring offense variable 10 was harmless.  *See United States v. Cramer*, 777 F.3d 597, 603 (2d Cir. 2015) (stating that an error in calculating sentencing guidelines is harmless

20

if correcting the error would not result in a change in the sentencing guidelines range).

### 5. Offense Variable 19

Petitioner contests the twenty-five points that he was given for offense variable 19. This offense variable concerns "threat[s] to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services." Mich. Comp. Laws § 777.49. Twenty-five points is a proper score when "[t]he offender by his or her conduct threatened the security of a penal institution or court." Mich. Comp. Laws § 777.49(a).

Petitioner contends that his fight with the victim had no effect on the security of the prison, as it did not involve any other inmates and it was confined to one location. His trial attorney, moreover, pointed out at sentencing that Petitioner was placed in solitary confinement after the assault and that there were no subsequent problems at the jail. (Mot. Hr'g and Sentencing Tr. at 119-20, Aug. 28, 2009.)

The pre-sentence investigation report, however, indicates that the Bay County Jail Intake was shut down after the incident. (Delayed Application for Leave to Appeal, Mich. Ct. App. No. 295312, Pg ID 601.) This is some indication that Petitioner's conduct may have threatened the security of the jail. The state

trial court, in fact, concluded from the pre-sentence report and the video of the assault that the criminal incident created quite a disruption at the jail.  (Mot. Hr'g and Sentencing Tr. at 120-21, Aug. 28, 2009.)   Offense variable 19 therefore was appropriately scored at twenty-five points.

### 6.  Conclusion on Petitioner's Sentencing Claims

The trial court did not sentence Petitioner on the basis of extensively and materially false information that Petitioner had no opportunity to correct through counsel.  Consequently, Petitioner's sentencing claims do not warrant habeas corpus relief.

### C.    Claims Three, Four, and Six:  Prosecutorial Misconduct, Insufficient Evidence, Conflict of Interest, and Judicial Bias

In his third claim, Petitioner alleges that the prosecutor erred by not granting immunity to a defense witness at the post-conviction hearing in state court. Petitioner further alleges that trial counsel was ineffective for failing to challenge the prosecutor's decision not to grant immunity.

In his fourth claim, Petitioner alleges that there was insufficient evidence of guilt to support his conviction and that his trial attorney was ineffective for failing to properly communicate with him.  Finally, in his sixth claim, Petitioner alleges that his trial attorney had a conflict of interest that would have affected the fairness of the trial and that the trial court was biased against him.  Respondent asserts that

all three of these claims are procedurally defaulted because Petitioner failed to raise the claims on direct appeal and because the state court relied on Petitioner's omission to deny relief.

### 1. Procedural Default

The doctrine of procedural default prohibits a federal court from reviewing the merits of a habeas petitioner's claims, including constitutional claims, if a state court declined to hear the claims because the prisoner failed to abide by a state procedural rule. *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012). In this Circuit,

> "[a] habeas petitioner's claim will be deemed procedurally defaulted if each of the following four factors is met: (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default." [*Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011)]. To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look "to the last reasoned state court decision disposing of the claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (*en banc*).

*Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013).

### a. The First Factor

The state procedural rule in question here is Michigan Court Rule 6.508(D)(3), which prohibits state courts from granting relief from judgment if a defendant could have raised his claims on appeal from the judgment or sentence.

An exception to this rule exists when the defendant shows "good cause" for his or her failure to raise the claims on appeal and "actual prejudice from the alleged irregularities that support the claim for relief."  Mich. Ct. R. 6.508(D)(3)(a) and (b).  Petitioner violated Rule 6.508(D)(3) by first raising his third, fourth, and sixth claims in his motion for relief from judgment rather than on direct appeal from his convictions.  Thus, the first factor is satisfied.

### b.  The Second Factor

The last state court to review Petitioner's third, fourth, and sixth claims in a reasoned opinion was the trial court, which enforced Rule 6.508(D)(3) in its order denying Petitioner's motion for relief from judgment.  The court quoted the rule and stated that all the issues in Petitioner's motion could have been raised or were raised in his appeal.  *See People v. Jackson*, No. 09-10524-FH-G, Opinion and Order Denying Mot. for Relief from Judgment at 2-3 (Bay County Cir. Ct. June 17, 2011).  The court went on to say that Petitioner had failed to establish "good cause" for not raising his claims on appeal, as required by the Rule 6.508, and that he also failed to establish "actual prejudice" as a result of the alleged irregularities. *Id*. at 3.

The trial court concluded its order by stating that Petitioner was barred from seeking relief under Rule 6.508, in part, because the issues could have been raised

24

on appeal and because Petitioner "failed to demonstrate that his failure to file an

appeal or seek leave to appeal amounted to good cause as set forth in MCR

6.508(D)(3)(a)."  *Id.* at 8.  The court also stated that, even if Petitioner had satisfied

the "good cause" requirement, he would still not be entitled to relief because he

had "failed to show that he was prejudiced by any failure to raise the issues . . . ."

*Id.*

Although the trial court also addressed the merits of Petitioner's claims as an

alternative holding, this "does not require [the Court] to disregard the state court's

finding of procedural bar."  *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998).  As

explained in *Harris v. Reed*, 489 U.S. 255 (1989),

> a state court need not fear reaching the merits of a federal claim in an
> *alternative* holding.  By its very definition, the adequate and
> independent state ground doctrine requires the federal court to honor a
> state holding that is a sufficient basis for the state court's judgment,
> even when the state court also relies on federal law.  See *Fox Film
> Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L. Ed. 158
> (1935). Thus, by applying this doctrine to habeas cases, [*Wainwright
> v. Sykes*, 433 U.S. 72, 97 S. Ct. 2497 (1977)] curtails reconsideration
> of the federal issue on federal habeas as long as the state court
> explicitly invokes a state procedural bar rule as a separate basis for
> decision.  In this way, a state court may reach a federal question
> without sacrificing its interests in finality, federalism, and comity.

*Id.* at 264 n.10 (emphasis in original).

25

Here, the trial court relied on Rule 6.508(D)(3) to deny relief on Petitioner's claims and addressed the merits of Petitioner's claims as an alternative holding. Therefore, the second procedural-default factor is satisfied.

### c. The Third Factor

The third factor is satisfied if the state procedural rule in question was an adequate and independent state ground for denying review of a federal constitutional claim. The Sixth Circuit has determined that the procedural bar found in Rule 6.508(D) is an adequate and independent state ground on which Michigan courts may rely in foreclosing review of federal claims. *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005) (citing *Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000), and *Munson v. Kapture*, 384 F.3d 310, 315 (6th Cir. 2004)). Consequently, the third factor is satisfied.

### d. The Fourth Factor

The fourth and final factor is whether Petitioner has shown "cause" for his failure to raise his claims on direct appeal and prejudice from the alleged irregularities that support his claims. Petitioner has not alleged cause for his default and resulting prejudice. The Court therefore deems the "cause and prejudice" argument waived.

### 2. Miscarriage of Justice

In the absence of "cause and prejudice," Petitioner can proceed with his procedurally defaulted claims only if he "demonstrate[s] that the failure to consider the claims will result in a fundamental miscarriage of justice. A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). To be credible, however, "such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence . . . ." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A petitioner's burden at this gateway stage is to demonstrate that more likely than not, in light of some new evidence, any reasonable juror would have reasonable doubt. *House v. Bell*, 547 U.S. 518, 538 (2006).

Petitioner repeatedly stated at the post-conviction hearing on his motion to withdraw his plea that he was innocent, and he implied that the victim instigated a fight with him in order to have Petitioner prosecuted or removed from their jail block. (Mot. Hr'g and Sentencing Tr., at 14-16, Aug. 28, 2009.) But the inmate that Petitioner hoped to present at the hearing to support this theory did not testify because he invoked his Fifth Amendment right to remain silent (*id.* at 9-10), and the state trial court concluded that Petitioner had been unable to establish that someone set up the fight (*id.* at 67).

27

Furthermore, according to Detective Chris Mausolf, Petitioner informed the detective during an interview that the victim never hit him.  Petitioner also admitted to Detective Mausolf that the assault was wrong.  He stated that he had been upset at the time, that he "had issues," and that he also had "crazy thoughts." (*Id*. at 47-48, 50-51.)  The assault, moreover, was videotaped, and several of the inmates who were interviewed after the incident confirmed what happened. Nothing in their descriptions of the incident suggests that it was a mere fist fight or that the victim was responsible for the incident.  In fact, one inmate stated that Petitioner should not have hit the victim with the door and then proceeded to punch him again, and another inmate stated that the incident made him sick to his stomach.

Petitioner has failed to allege a credible claim of actual innocence. Therefore, a miscarriage of justice will not result from the Court's failure to address the substantive merits of Petitioner's defaulted claims.

### 3.  Summary

To summarize, Petitioner's third, fourth, and sixth claims are procedurally defaulted because Petitioner failed to the raise the claims on direct review.  In addition, the last state court to issue a reasoned opinion on the claims rejected the claims in part on the basis of Michigan Court Rule 6.508(D)(3).  Finally, Petitioner

has not shown cause for his failure to raise the claims on direct appeal or a
miscarriage of justice.  The Court therefore finds habeas claims three, four, and six
to be procedurally defaulted.

## D.  Clam Five: Denial of Sentencing Credits

Petitioner asserts that the trial court erred by denying him credit against his
sentence for the time that he served in jail before his sentencing.  The trial court,
however, stated in its order denying Petitioner's motion for relief from judgment
that the court had already entered an amended judgment resolving this issue.  *See
People v. Jackson*, No. 09-10524-FH-G, Opinion and Order Denying Mot. for
Relief from Judgment at 3 n.1 and 7 (Bay County Cir. Ct. June 17, 2011).
Petitioner's claim is moot, as the issue he presents to the Court is no longer "live,"
and he no longer suffers from "an actual injury" that can be "redressed by a
favorable judicial decision."  *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013).  The
Court therefore declines to grant the writ of habeas corpus on the basis of claim
five.

## V.  CONCLUSION

Petitioner's fifth claim is moot, and his third, fourth, and sixth claims are
procedurally defaulted.  Furthermore, the state courts' rejection of Petitioner's
claims first and second claims did not result in decisions that were contrary to

federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  Accordingly, the habeas corpus petition is denied.

## VI.  CERTIFICATE OF APPEALABILITY

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong . . . .  When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists could debate the Court's assessment of Petitioner's first claim regarding the voluntariness of his plea.  Consequently, a certificate of appealability may issue on claim one.

30

Reasonable jurists would not find the Court's assessment of Petitioner's second claim debatable or wrong.  Reasonable jurists also would not debate whether the Court's procedural rulings on Petitioner's remaining issues are correct or whether those issues state a valid claim of the denial of a constitutional right. The Court therefore declines to issue a certificate of appealability on claims two through six.

## VII.  ORDER

For the reasons given above,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED** as to claim one and **DENIED** as to the remaining claims.

**IT IS FURTHER ORDERED** that Petitioner may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

**SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: July 18, 2016

31

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, July 18, 2016, by electronic and/or U.S. First Class mail.

<u>s/ Kelly Winslow for Richard Loury</u>
Case Manager